IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DAVID LEE CLAY                                                                                             PLAINTIFF

V.                                                               CIVIL ACTION NO. 4:21CV149-SA-DAS

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF SOCIAL SECURITY                DEFENDANT

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits and supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal directly to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law and having heard oral argument, finds the decision of the Commissioner of Social Security should be reversed.

## FACTS

The plaintiff, David Lee Clay, filed for benefits on December 12, 2019, alleging onset of disability on October 3, 2019. The Social Security Administration denied the claim initially and on reconsideration. His date last insured is December 31, 2024. Following a hearing, the ALJ issued an unfavorable decision on May 21, 2021. (Dkt. 10 p. 14-28).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

The ALJ determined Clay had the following severe impairments: congestive heart failure, hypertension, torn left rotator cuff, left acromioclavicular (AC) joint arthritis, cerebellar stroke syndrome, and obesity.  The ALJ found Clay retained the residual functional capacity (RFC) to perform a limited range of light work.  Clay can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  He cannot lift anything above shoulder level with his non-dominant left arm, and he is limited to simple, routine, repetitive tasks.

The ALJ found Clay cannot perform his past relevant work as a truck driver, tire repairer, or flooring installer, because these jobs are performed at the medium, heavy, and very heavy levels of exertion.  Based on the testimony of the vocational expert, the ALJ found Clay could do other jobs that exist in substantial numbers in the national economy, namely small products assembler, produce sorter, and assembly press operator, all of which are unskilled jobs with over 1.1 million jobs in the national economy. The ALJ therefore determined that Clay was not disabled.

## ANALYSIS

Clay raises a single argument — that the ALJ improperly evaluated the medical source statement from Clay's treating nurse practitioner.

**1. Medical Records**

Clay's medical records show that he was seen at the Greenwood-Leflore Hospital emergency room on December 10, 2019 with complaints of dizziness, numbness, weakness, and blurry vision. He reported intermittent numbness and weakness in the three weeks prior to this visit.  Clay had suffered another stroke years earlier and had a history of hypertension and coronary artery disease.  He was admitted to the hospital, diagnosed with an acute left cerebellar

infarct, and started on aspirin. He exhibited mild left hemiparesis, and his sensory examination showed decreased sensation on his left side. The discharge diagnosis was left cerebellar subacute infarct and uncontrolled hypertension.

Clay was also diagnosed with chronic congestive heart failure with some exertional shortness of breath. With continued adjustments, the heart failure was reported to be controlled by medication, but his ejection fraction though greater than 35%, was still significantly abnormal. His medical records include findings of some right and left-sided hemiparesis and weakness. Clay had also suffered a torn rotator cuff and shoulder arthritis that made it impossible for him to reach overhead with the left, non-dominant arm.

**2. The Medical Opinions**

There are three medical source statements addressing Clay's physical RFC in the administrative record: the original and reconsideration reports of the state agency medical consultants, (SAMCs) and one from Clay's treating nurse practitioner, Yvonne Tanner.

The initial SAMC examiner found Clay could perform medium work subject to postural and manipulative limitations.

On reconsideration, another SAMC found Clay was limited to light work with added non-exertional limitations. The ALJ found the reconsideration opinion was persuasive but added that Clay could also never lift above shoulder level on the left because of the torn rotator cuff and AC joint arthritis. The ALJ also noted diminished memory secondary to cerebellar stroke syndrome and found Clay would be limited to performing simple, routine, repetitive tasks.

Tanner, who saw Clay once a month, found he would be limited to lifting ten pounds occasionally, could stand and walk for one to two hours per day, but less than an hour without a break. He could sit for one hour, thirty minutes at a time and could not perform postural

activities. She found he would have limitations in reaching, handling, feeling, pushing, pulling, and speaking, but not in hearing. Clay could not be exposed to heights or moving machinery. In her report, Tanner stated Clay's congestive heart failure, which caused shortness of breath during activities, would impact work-related activities; that he would have good days and bad days; and he could be expected to miss more than four days of work per month.

The ALJ found Tanner's medical source statement unpersuasive. Clay argues the ALJ has failed to provide an explanation for this finding, and the Commissioner takes the position that the ALJ's explanation is adequate.

### 3. Regulatory Requirements

Beginning with applications filed on or after March 27, 2017, new regulations governed how ALJs evaluate medical opinions in disability cases. The new regulations abandoned the hierarchy of opinions found in the preceding regulations. The older regulations strongly favored the opinions of treating providers, applying a presumption that these opinions were entitled to controlling weight. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Regulations"), 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 416.920c(a). The new regulations abandoned the "treating physician" rule and with it the requirement that ALJs provide a detailed, multi-factor justification if giving these opinions little or no weight. *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). Section 404.1520c of the new regulations instead provides: "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20. C.F.R. § 404.1520c(a).[2]

---

[2] "We revised the factors for considering medical opinions and prior administrative medical findings in final 404.1520c and 416.920c to both emphasize that *there is not an inherent persuasiveness to evidence from MCs*(medical consultant)*, PCs* (psychological consultant) *or CE* (consulting examiner) *sources over an individual's own medical source(s,) and vice versa, and to highlight that we continue to consider*

Under the new regulations, ALJs must determine the persuasiveness of experts' opinions using five factors: 1) supportability; 2) consistency; 3) the source's relationship with the patient; 4) the source's specialty; and 5) a catchall provision for "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(b)(2). In effect, the regulations simplify the decisions by requiring discussion of only first two factors: the supportability and consistency of the expert opinions with the record. *Id.*

In evaluating the supportability of a medical opinion, the regulations provide that, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increases." *Vellone v. Saul*, 1:20–CV–00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)). The consistency evaluation is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." 20 C.F.R. § 404.1520c(c)(1) Revision to Regulations, 82 Fed. Reg. at 5853.

### 4. What is an Adequate Explanation?

While the new regulations simplify the explanation required, ALJs must still provide an adequate explanation of the "persuasiveness" for all expert opinions. The decisions must provide the appellate court with sufficient information to conduct a meaningful appellate review of the decision-making process. The courts must be able to read the decision and know what evidence the ALJ considered and understand why the ALJ reached a given result. Whenever the agency reaches a decision that is unfavorable to a claimant, in whole or in part, the decision must "contain a statement of the case, in understandable language, setting forth a discussion of the

---

*medical sources longstanding treatment relationship with the individual."* Revisions to Regulations, 72 Fed.Reg. at * 5844, ¶ 9. Emphasis added.

evidence, and stating the Commissioner's determination and the reason or reasons." 42 U.S.C. § 405 (b)(1).

While the case law addressing these regulations is still developing, in other contexts the courts have addressed the level of explanation required for meaningful appellate review. In *Audler v. Astrue*, the Fifth Circuit reversed a Step Three decision that Audler did not meet any listing. *Audler v. Astrue*, 501 F.3d 446, 448 (2007). In that case, the ALJ merely pronounced that none of the listings were met, omitting any discussion of the medical evidence or identification of the applicable listings. *Id.* [3]

The Fifth Circuit has stated, that an "ALJ does not need to comment on every piece of evidence, but only must build *an accurate and logical bridge between the evidence and the final determination*. *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)(emphasis added) (citing *Glomski v. Massanari*, 172 F.Supp.2d 1079, 1082, 77 Soc.Rep.Serv. 305 (E.D. Wis. 2001)). The cases addressing the new regulations recognize that a sufficient explanation of the persuasiveness of medical opinions is critical to the ability of the courts to conduct meaningful appellate review. It is not sufficient to leave the court to speculate about the judge's reasoning, nor to ask the court to engage in *post hoc* rationalization.

In *Pearson v. Commissioner of Social Security*, the court required a discernible "logic bridge" between the evidence and the ALJ's persuasiveness finding. *Pearson v. Comm'r of Soc. Sec.*, No. 1:20cv-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug 11, 2021), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Ag 18, 2021) (citing *Ramirez v. Saul*, No. WA-20-CV-457, 2021 WL 2269473 at *6 (W.D. Tex. June 3, 2021)) and *Todd v. Comm'r of*

---

[3] See *Stowers v. Kijakazi*, No. 3:21-cv-191-DAS, 2022 WL 3040625 (N.D. Miss. Aug. 1, 2022) in which this court found that merely identifying the appropriate listings, without more, is also not an adequate explanation for a Step Three decision.

*Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *9 (N.D. Ohio June 3, 2021), *report and recommendation adopted,* No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021). [4]

However, simply paying lip service to the regulatory requirements without providing any detail is not sufficient. *See, e.g., Howard D. v. Saul*, No. 5:19-CV-01615, 2021 WL 1152834, at *12 (N.D.N.Y. Mar. 26, 2021). Looking at how the cases have applied these principles to specific factual scenarios is instructive. In *Pearson*, the court found the ALJ erred by reciting facts in the record and appending a conclusory finding instead of an explanation for his reasoning. The court noted the "lion's share of the ALJ's opinion was committed to simply restating the facts." *Pearson.* 2021 WL 3708047 at *6. He provided no reasoning for finding the SAMC opinions persuasive. While the ALJ provided some explanation for rejecting the treating provider opinions, because the SAMC opinions were neither cumulative nor peripheral to the question of disability, the claimant's substantive rights were affected by the error. "[T]the failure to put forth any reasons why the only two medical opinions that supported the RFC were persuasive was not harmless error. No substantive discussion whatsoever was provided as to why the non-examining, non-treating physicians' opinions were found to be persuasive." *Id.* at *7.

Similarly in *Cooley v. Commissioner of Social Security,* the ALJ's decision was reversed because the persuasiveness finding was not explained. *Cooley v. Comm'r of Soc. Sec.,* No. 2:20-cv-46, 2021 WL 4221620 (S.D. Miss. Sept. 15, 2021). The ALJ found the treating provider's

---

[4] In *Todd,* the ALJ dismissed the treating physician's opinion as inconsistent with the records without referencing any evidence of inconsistency and attributed the favorable opinions to sympathy, patient insistence, or a desire to avoid conflict with the patient. "The ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that [the doctor's] opinion was substantially inconsistent with the medical record. And the error is not harmless because, without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision. The fact that the ALJ's ultimate conclusion may be supported by substantial evidence, is not enough." *Id.* Internal citations omitted.

favorable opinions were not persuasive because they were "generally inconsistent" with the treatment records which the ALJ characterized as showing generally unremarkable findings during physical examinations. However, the court noted that while there were indeed normal findings, the abnormal, remarkable findings were the ones related to the conditions for which Cooley sought disability. The ALJ failed to provide any reference to anything in the record that demonstrated a lack of consistency between the opinions and the record taken as a whole. The omission was even more notable because, as the court found, there were similarities between the treating doctor's opinions and the ALJ's RFC, a finding that obviously undermined the vague finding of a lack of consistency. *Id.* at *7. The fact that there was medical evidence in the record that could have played a role in the decision did not render the error harmless. As in *Pearson*, because the opinions were neither peripheral to the issue of disability nor simply cumulative, the error was not harmless. *Id.* at *8. See *Moore v. Saul*, 2021 WL 754833, at *2-3(S. D. Miss. Feb. 26, 2021.)[5]

In rejecting the opinions of Clay's treating nurse practitioner, the ALJ set forth the following discussion.

> In a form completed in February 2021, Yvonne Tanner, CFNP (NP), opined that the claimant could lift/carry 10 pounds, that he could stand/walk from one to two hours in an eight-hour workday, and that he was limited to one hour of sitting in an eight-hour workday. She opined that he should never perform postural activities and that he had unspecified manipulative, communicative, and environmental limitations and that he would miss more than four days of work each month (B17F). This opinion, which is largely a series of checkmarks on a standard form,

---

[5] A treating physician found that Moore was limited to lifting five pounds based on back pain and needing to carry a cane. The court found the ALJ adequately explained why he found Moore did not need a cane but gave no explanation for why he rejected the lifting limit. The court rejected the Commissioner's argument that pointed to evidence suggesting Moore could lift more than five pounds. "But the ALJ never said that and never 'explained' supportability or consistency as to the lifting opinion." *Id.* at *3. The omission was material given the disparity between the lifting limits and the requirements for medium work that the ALJ assessed as Moore's RFC.

> contains minimal commentary or explanatory text to justify the extreme limitations NP Tanner proffered. It is inconsistent with the clinical notes from the office visits throughout the relevant period, which do not include examination findings that justify or warrant the significant limitations NP Tanner assessed and instead include generally unremarkable physical examination findings. As such the opinion is not persuasive. R 25.

The court notes that other than stating the elements of the nurse practitioner's opinion and concluding the opinion is not persuasive, the ALJ has devoted just two sentences to explain the rejection of this provider's opinion.

In the first sentence the ALJ characterizes the medical source statement as "largely a series of checkmarks on a standard form" and "containing minimal commentary" to justify the "extreme limitations." While calling the disabling limitations "extreme" at least hints at the ALJ's thinking, the characterization of the content of the medical source statement is neither accurate, nor in the context of the facts in this case, logical. Medical sources statements from treating sources, consulting sources, and the SAMCs are typically on a check-marked or other forms and contain little or no explanation.

The statement from this nurse practitioner is quite different from that norm. It sets out that she had monthly visits with Clay for five months prior to her statement. In support of the lifting limitations, Tanner specifically referenced the February 15, 2020, MRI and stated that it revealed full thickness infraspinatus tear and complete multifocal tearing of the infraspinatus tendon with 10% loss of tendon diameter. Another of her comments is not completely legible but appears to refer to the tendonitis referenced in the MRI (R. 663). After giving her opinion on Clay's standing/walking limitations, the nurse practitioner referenced the MRIs that showed multiple cerebellar infarcts and explained this translates to problems with balance and coordination problems, and weakness or paralysis. Her opinion on sitting restrictions is followed by references

to the MRI of his lumbar spine which revealed a right lateral disc herniation with possible impingement of the nerve root.

This pattern of opinions, followed by some explanation and an explicit reference to supporting medical records continues. She explained the postural limitations she found. (R. 664) She explained her limits on reaching, handling, feeling, pushing/pulling, and speaking by referencing Clay's balance problems, extremity tingling and numbness, and his slow speech and memory problems by referencing the brain MRI and lumbar spine studies. She included multiple environmental limits she explained were needed because of Clay's congestive heart failure, long term use of anti-coagulants, and shortness of breath during activities. Only at the end of the form, which asked about good days and bad days, absences from work, and the duration of his impairments, did Tanner not set out further explanation, perhaps because the form did not include lines for additional information.

The medical references and explanations are comparable to and more specific and detailed than those found in the SAMC's statements in this case. And here the SAMC opinions are themselves more detailed than the norm. Yet the SAMC opinions were accepted as persuasive. If Tanner's opinions are not persuasive because they are not explained, so are the SAMC opinions. Because the proffered explanation is not accurate, it does not provide the needed bridge between evidence and resulting persuasiveness decision.

Finally, the second sentence in the ALJ's discussion of Tanner's opinions is boilerplate. It asserts that Tanner's opinions are not consistent with the treatment records which the ALJ found did not show findings severe enough to justify the level of limitations Tanner imposed. There is no reference to any records or any findings in the record and thus is difficult to review on appeal.

The court agrees with the Commissioner's argument that the court must consider more than just the part of the decision directly discussing a specific opinion. Other parts of a decision may well add to the explanation. In *Hubbard v. Commissioner of Social Security*, the claimant challenged the adequacy of the explanation for the rejection of treating expert opinions. *Hubbard v. Comm'r of Soc Sec.*, 2022 WL 196297 (N.D. Tex. January 21, 2022). The court rejected this argument, in part, because the ALJ explained why he found the SAMC's opinions persuasive.

In this case however, the ALJ was just as conclusory in finding the SAMC reconsideration report persuasive. The ALJ found the opinions persuasive because it was consistent with his opinion that Clay had severe, but non-disabling conditions. The only other explanation given by the ALJ shedding light on the persuasiveness decision was the ALJ's adjusting the RFC to further restrict reaching and add memory restrictions. Those restrictions were adopted from Tanner's report.[6]

The Commissioner also argues that because the nurse practitioner referenced and relied upon some of the same medical records reviewed by the SAMC physicians, the decision should be upheld. Post hoc explanations from the Commissioner cannot salvage an inadequate explanation and fail to provide the basis for meaningful review. *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

---

[6] Though neither assigned as error, nor the basis for remand, the court notes the ALJ found that the cane regularly used by Clay, though prescribed for his wife, was not medically necessary. As a matter of common sense, no doctor is likely to prescribe a cane to Clay if he already has one available to him. The ALJ by implication rejected the initial SAMC opinion which found Clay could perform medium work and found no balancing restrictions. Both the reconsideration opinion the ALJ accepted as persuasive and the nurse practitioner opinions found that Clay could *never* balance, indicating they both found the cane was necessary. This concurrence of opinions on Clay's balance issues calls into question whether this proof was overlooked and/or whether substantial evidence supports the ALJ's decision on the need for a cane which is likely material to the outcome of the case. This issue should be revisited on remand.

**ACCORDINGLY, IT IS ORDERED** that the decision of the Commissioner is reversed, and the case remanded for further proceedings consistent with this order.

**SO ORDERED** this the 21st day of October, 2022.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**
